## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| CHART INC. *Plaintiff*, v. EXTRON COMPANY, *Defendant*. | Case No. _____ **Jury Trial Demanded** |

### CHART INC.'S COMPLAINT FOR CONTRIBUTION
### (WITH JURY DEMAND ENDORSED HEREON)

COMES NOW Plaintiff Chart Inc. ("Chart" or "Plaintiff"), by and through the undersigned counsel, and hereby files this Complaint against Defendant Extron Company ("Extron" or "Defendant" and together with Chart the "Parties").  In support of its Complaint, Chart states and alleges as follows:

### INTRODUCTION

1. This case arises out of Chart's purchase of a controller designed by Extron for use in operating Chart's cryogenic freezer tanks.  Specifically, in or around September 2011, Chart purchased from Lakeland Engineering Equipment Company ("Lakeland") a number of TEC 3000 controllers (as defined below) designed by Extron, and installed those controllers on cryogenic freezer tanks that were sold to fertility laboratories for the storage and preservation of human eggs and embryos.  On approximately March 4, 2018, one of those tanks at the Pacific Fertility Center in California—referred to as "Tank 4"—failed, resulting in the loss of or damage to certain eggs and embryos.  As discussed below, the failure of the TEC 3000 controller—designed by Extron— was a primary and contributing cause of the failure of Tank 4.

1

2. After the failure of Tank 4 at the Pacific Fertility Center in 2018, Chart was named as a defendant in a number of lawsuits based on the failure of the tank and the resulting loss of or damage to the plaintiffs' eggs or embryos. The claims of the first five plaintiffs in one of those lawsuits went to trial in 2021 and resulted in a judgment of $13,525,000 against Chart on or around June 10, 2021.

3. In that lawsuit, *In re Pacific Fertility Center Litigation*, Case No. 3:18-CV-01586 (N.D. Cal.), which was tried in the U.S. District Court for the Northern District of California (the "Federal Pacific Fertility Action,") the jury found, inter alia, that the TEC 3000 controller designed by Extron was defective and that the defective controller was a contributing cause of the plaintiffs' losses. Following that judgment, Chart entered into a settlement agreement with the plaintiffs, as well as certain plaintiffs in the actions styled *Pacific Fertility Cases, No*. CJC-19-00021 (S.F. Super.), *Wong v. Chart Industries, Inc.*, No. 4:18-cv-04839-JSW (N.D. Cal.), and *Wong v. Chart Inc., et al.* No. 4:19-cv-01342-JSW (N.D. Cal.) (collectively, with the Federal Pacific Fertility Action, the "California Actions"), pursuant to which, on or about March 20, 2023, Chart paid a confidential sum in settlement and secured releases for itself and Extron, among others, in satisfaction of the judgment in the Federal Pacific Fertility Action, along with a release of the plaintiffs' claims in the California Actions against Chart and Extron related to the Tank 4 failure.

4. To date, Extron has not paid or reimbursed Chart for any of the damages, losses, or fees that Chart incurred in the California Actions or the resulting settlement—despite being statutorily bound to contribute its share of liability arising out of the California Actions and the resulting settlement. Accordingly, Chart now brings this action against Extron, seeking contribution and reimbursement for its losses in the underlying California Actions and the resulting settlement.

## PARTIES

5. Chart is a corporation organized and existing under the laws of Delaware, with a principal place of business at 2200 Airport Industrial Drive, Suite 100, Ball Ground, Georgia 30107.

6. At the time of the purchase transaction described herein, Chart maintained a principal place of business at One Infinity Corporate Centre Drive, Suite 300, Garfield Heights, Ohio 44125.

7. Extron is a corporation organized and existing under the laws of Minnesota with a principal place of business at 15400 Medina Road, Minneapolis, Minnesota 55447.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because complete diversity of citizenship exists between the Parties and the amount in controversy (including, without limitation, the amount of the judgment against Chart in the Federal Pacific Fertility Action and the resulting settlement described herein) exceeds $75,000.

9. Venue is proper in this Court because, as described herein, Extron designed the TEC 3000 controllers to be installed into Chart's cryogenic freezer tanks with the knowledge that Chart was an Ohio company. Furthermore, Chart began purchasing the TEC 3000 controllers from Extron in 2006, commencing a business relationship that had been ongoing for at least five years as of Chart's 2011 purchase of the TEC 3000 controller at issue in this case.

## FACTUAL BACKGROUND

**A.  Background on Chart and Extron.**

10. Chart is a global manufacturer of cryogenic equipment and technologies used in a variety of industries. At the time of the Tank 4 incident, Chart manufactured and distributed

cryogenic freezer tanks used to preserve human eggs and embryos at fertility clinics across the United States.

11. Lakeland is an original equipment manufacturer (OEM) and distributor of component parts and equipment used in a variety of industries. At all times pertinent to this dispute, Lakeland served as a manufacturer and distributor of parts on behalf of Extron.

12. Extron is engaged in the business of designing and selling equipment control parts for use in a variety of industries. Among other product offerings, Extron designs and sells PC-board level controllers used to monitor and control the performance of industrial equipment, including, in this case, the MVE TEC 3000 ("TEC 3000") controller used to operate cryogenic freezer tanks.

**B.     The TEC 3000 Controller.**

13. In the early 2000s, Chart informed Lakeland and Extron that it wanted to purchase controllers that would be used in operating the cryogenic freezer tanks Chart was manufacturing and selling throughout the United States.

14. As a result, Lakeland approached Extron and explained that Chart was seeking a controller that could be installed on Chart's freezer tanks to monitor and maintain the tank's temperature and liquid nitrogen ("LN2") levels. Based upon Chart's request, Extron designed the TEC 3000 controller.

15. The TEC 3000 controller was designed to record and monitor temperature and LN2 levels in Chart's cryogenic freezer tanks and to provide alarm notifications if any issues arose with temperature or LN2 levels in the tank.

16. The TEC 3000 controller also contained a memory storage function, thereby allowing users to monitor and review activity in the tank over an extended period of time.

17. The TEC 3000 controller contained an LCD screen which displayed a series of codes that were designed to display the temperature and LN2 levels in the tank and provided the tank operator with additional data related to the functionality of the tank.

18. In addition to providing temperature and LN2 level readings to the user, the TEC 3000 controller was designed to ensure that LN2 levels remained steady in the tank. The controller also contained an "auto fill" function that would instigate a re-filling of the tank if LN2 levels dropped below a certain threshold.

19. The TEC 3000 controller was designed to be installed on and used in operating the cryogenic freezer tanks manufactured by Chart.

20. After Extron designed the TEC 3000 controller, Lakeland began manufacturing and selling the TEC 3000 controller to Chart commencing in approximately 2006.

21. Chart in turn installed the TEC 3000 controllers on the cryogenic freezer tanks it manufactured and sold to distributors. Those distributors then sold the tanks to laboratories.

**C.      Chart Purchases Extron's TEC 3000 Controllers from Lakeland.**

22. In or around the summer of 2011, Chart made an offer to Lakeland to purchase approximately nine (9) TEC 3000 controllers.

23. In connection with the Parties' transaction, on or around September 10, 2011, Chart issued a purchase order to Lakeland summarizing the TEC 3000 parts being purchased, the quantity and cost of the parts, the payment terms, the delivery terms, and the terms and conditions of the transaction. The purchase order was sent to Lakeland in or around September 10, 2011.

24. Lakeland shipped and delivered the TEC 3000 controllers to Chart on or around October 27, 2011.

5

25. After timely receiving the TEC 3000 controllers, Chart subsequently manufactured and sold cryogenic freezer tanks containing the TEC 3000 controllers designed by Extron.

**D.     The TEC 3000 Controller and the Tank Failure.**

26. Chart incorporated the TEC 3000 controllers it purchased into certain cryogenic freezer tanks that were sold to the Pacific Fertility Center in California.

27. One of those tanks—Tank 4—was purchased by the Pacific Fertility Center in approximately 2012. Tank 4 had a TEC 3000 controller installed on it as a component part.

28. In the Federal Pacific Fertility Action, plaintiffs alleged that in 2018, Chart became aware of reports from customers in the field that the TEC 3000 controller was malfunctioning and having performance issues. Those plaintiffs further alleged that Chart was made aware from its customers in the field that the serial number or "S/N" on the TEC 3000 was unexpectedly resetting to zero (hereinafter the "S/N Zero Event(s)").

29. The plaintiffs in the Federal Pacific Fertility Action further alleged that when an S/N Zero Event occurred on the TEC 3000 controller, the controller would subsequently fail to operate properly. Specifically, they alleged that after an S/N Zero Event, the temperature and LN2 level readings would not be accurately reflected on the LCD display and the operator of the tank would be unable to accurately monitor the temperature in the tank or the level of LN2 in the tank using the controller.

30. The plaintiffs alleged that once an S/N Zero Event occurred, the operator of the tank would be required to manually monitor the unit in an attempt to maintain steady temperature levels and LN2 levels in the tank—a much less reliable process than the automated monitoring that the TEC 3000 was designed to perform.

31. In January 2018, Extron was informed on multiple occasions of these S/N Zero Events and the fact that the S/N Zero Events were preventing the TEC 3000 controllers from operating properly.

32. Extron subsequently performed tests on the issue and determined that these S/N Zero Events were being caused by high voltage transient events. In other words, an unexpected electromagnetic force could cause the TEC 3000 controller's settings to default to zero and render the controller incapable of accurately measuring temperature and LN2 levels.

33. The TEC 3000 controller should have reasonably been designed in a manner that an unexpected electromagnetic force would not render the TEC 3000 controller inoperable in this manner.

34. Through testing, Extron attempted to find a solution to the problem in early 2018, but, upon information and belief, was unable to do so.

35. On or around February 15, 2018, the TEC 3000 controller installed on Tank 4 at the Pacific Fertility Center experienced an S/N Zero Event, thereby rendering the controller incapable of providing accurate readings of the tank's temperature and LN2 levels.

36. Due to the failure of the TEC 3000 controller, employees at the Pacific Fertility Center were required to manually monitor the temperature and LN2 levels in Tank 4, without the benefit of the accurate readings that the controller was supposed to provide.

37. As a result of the failure of the TEC 3000 controller to provide accurate readings, both temperature levels and LN2 levels in the tank were not properly maintained on Tank 4 at the Pacific Fertility Center.

38. On or around March 4, 2018, Tank 4 suffered a complete failure, resulting in the loss of or damage to certain eggs and embryos stored therein.

39. According to the plaintiffs' allegations in the Federal Pacific Fertility Action, the defective TEC 3000 controller, which was designed by Extron and manufactured and sold by Lakeland, caused the tank failure. Plaintiffs allege that the TEC 3000 controller caused the freezer unit in Tank 4 to fail to properly operate and preserve the eggs and embryos stored therein.

40. As a result of the failure of Tank 4 at the Pacific Fertility Center—and the loss of or damage to certain eggs and embryos—approximately 185 separate lawsuits were filed against Chart, Extron, and the Pacific Fertility Center.

**F.  The Federal Pacific Fertility Action Results in Judgment Against Chart.**

41. Among other lawsuits, in or around the fall of 2018, plaintiffs filed the Federal Pacific Fertility Action—a lawsuit against Chart, Pacific Fertility Center, and other defendants related to Pacific Fertility Center in the U.S. District Court for the Northern District of California, claiming injuries flowing from the defective TEC 3000 controller and the resulting freezer tank failure. The plaintiffs in the state court actions, *Pacific Fertility Cases*, No. CJC-19-00021 (S.F. Super.), brought claims against Chart and Extron, among others, claiming injuries flowing from the defective TEC 3000 controller and the resulting freezer tank failure.

42. Prior to adjudication of the California Actions, the plaintiffs dismissed Extron from the proceedings, due to a lack of personal jurisdiction over Extron in the state of California.

43. The first five plaintiffs in the Federal Pacific Fertility Action then proceeded to a trial by jury in June 2021. Although Extron was not a party to the Federal Pacific Fertility Action, the jury found, *inter alia*, that the TEC 3000 controller used to operate Tank 4 was "dangerous or likely to be dangerous when used in a reasonably foreseeable manner"; that the TEC 3000 controller contained a "defect" such that it should have been recalled or retrofitted;

8

and that the failure to recall the defective Extron TEC 3000 controller was a "substantial factor in causing harm to plaintiffs." A true and copy of the Verdict Form containing these findings is attached hereto as <u>Exhibit 1</u>.

44. In the Federal Pacific Fertility Action, the jury awarded damages of approximately $15 million to the plaintiffs, with 90% of this amount (approximately $13.5 million) allocated to Chart, and 10% allocated to the Pacific Fertility Center.

45. Because Extron was not a party to the Federal Pacific Fertility Action due to jurisdictional issues, no monetary liability was imposed on Extron for the defective TEC 3000 controller—this, despite the jury's finding that the TEC 3000 controller designed by Extron was dangerous and defective and was a substantial cause of Tank 4's failure.

46. To date, and despite bearing responsibility for the failure of Tank 4 as stated in the jury's award, Extron has not paid any monies to Chart in consideration of its satisfaction of the judgment in the underlying Federal Pacific Fertility Action, the California Actions or the resulting settlement.

47. Accordingly, Chart brings this action against Extron for contribution, seeking reimbursement of some or all of its damages and fees incurred in the California Actions and the resulting settlement.

## COUNT I:

### CONTRIBUTION PURSUANT TO OHIO REV CODE § 2307.25(B)

48. Chart incorporates Paragraphs 1-47 of this Complaint as if alleged fully herein.

49. Under Ohio law, a statutory right of contribution exists "in favor of a joint tortfeasor who has paid more than [its] proportionate share of the common liability." Ohio Rev. Code. § 2307.25(A).

50. In such cases, the tortfeasor may recover from a joint tortfeasor "the amount paid by that tortfeasor in excess of that tortfeasor's proportionate share." Ohio Rev. Code § 2307.25(B).

51. Here, Extron is a joint tortfeasor, in that the defective TEC 3000 controller was a contributing cause of the failure of Tank 4 at the Pacific Fertility Center, as the jury in the Federal Pacific Fertility Action found.

52. The failure of the TEC 3000 controller (designed by Extron) on Chart's freezer tank—and the resulting injury to the plaintiffs—created a common liability in tort between Chart and Extron.

53. On March 20, 2023, Chart paid a confidential sum in settlement and secured releases for itself and Extron, among others, to satisfy the Parties' common liability to the plaintiffs in the Federal Pacific Fertility Action and to certain plaintiffs in the California Actions. This amount is more than Chart's proportionate share of the common liability between Chart and Extron, given that the defective TEC 3000 controller was a substantial and contributing cause of the plaintiffs' injuries in the Federal Pacific Fertility Action.

54. In satisfaction of the Parties' common liability, Chart has paid in excess of its proportionate share of the Parties' common liability.

55. Accordingly, Chart is entitled to contribution from Extron for its proportionate share of the Parties' common liability in the California Actions.

56. Extron is statutorily required to make a monetary contribution to Chart in full or partial satisfaction of the Parties' common liability.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Chart respectfully requests that the Court enter a judgment in favor of Chart against Extron for the following relief:

    (a)    Award Chart all legal, statutory, and equitable relief pleaded herein, including without limitation, the settlement amount, attorneys' fees and costs in defense of the underlying litigation;

    (b)    Award Chart pre and post-judgment interest;

    (c)    Award Chart its attorneys' fees and costs;

    (c)    Award Chart such other and further relief as this Court deems just and proper.

## JURY DEMAND

A trial by jury is hereby is demanded on all issues so triable.

Respectfully submitted, this the 21st day of March, 2023.

CHART, INC.

By: */s/ David J. Dirisamer*

David J. Dirisamer (0092125)
BARNES & THORNBURG LLP
41 South High Street, Suite 3300
Columbus, OH  43215
Telephone:  614-628-0096
Facsimile:   614-628-1433
*David.Dirisamer@btlaw.com*

Denise A. Lazar
*(pro hac vice forthcoming)*
BARNES & THORNBURG LLP
One North Wacker Dr., Ste. 4400
Chicago, Illinois 60606
Telephone: (312) 214-4816
Facsimile:  (312) 759-5646
*denise.lazar@btlaw.com*

D. Austin Bersinger
(*pro hac vice forthcoming*)
John M. Moye
*(pro hac vice forthcoming)*
BARNES & THORNBURG LLP
3340 Peachtree Road N.E., Suite 2900
Atlanta, Georgia 30326-1092
Telephone: (404) 846-1693
Facsimile: (404) 264-4033
*JMoye@btlaw.com*
*Austin.Bersinger@btlaw.com*